**The PEOPLE of the State of Colorado, Complainant,**

v.

**Tamatha Ann BLASÉ, Respondent.**

**Nos. 03PDJ094, 03PDJ106, 04PDJ005, 04PDJ070.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Jan. 10, 2005.

Attorney Regulation. Upon conclusion of a sanctions hearing, the Hearing Board disbarred Respondent Tamatha Ann Blasé (Registration # 23107) from the practice of law, effective February 10, 2005. In this proceeding, it was established through the entry of default that Respondent engaged in a pattern of neglect, made misrepresentations to clients regarding actions taken, ceased communicating with clients, misappropriated client funds, and abandoned her practice without protecting her clients. Respondent's misconduct impacted ten client matters, causing injury and/or potential injury to those clients. Accordingly, Respondent violated Colo. RPC 1.3 (neglect of an entrusted legal matter), 1.4(a) (failure to keep client reasonably informed), 1.15(c) (failure to keep disputed property separate), 1.16(d) (failure to take steps to protect client interests and surrender papers/property upon termination), and 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation). Respondent did not appear at the sanctions hearing or present evidence in mitigation. However, the Hearing Board considered the fact that Respondent has no prior discipline. Aggravating factors included multiple offenses and a pattern of misconduct, vulnerable victims, substantial experience in the practice of law, a dishonest or selfish motive, and indifference to making restitution. The Hearing Board determined that under such circumstances, the ABA *Standards for Imposing Lawyer Sanctions* and controlling Colorado Supreme Court precedent support disbarment. Respondent was also ordered to pay the costs incurred in conjunction with this proceeding.

On November 10, 2004, a Hearing Board consisting of E. STEVEN EZELL and SISTO J. MAZZA, both members of the bar and WILLIAM R. LUCERO, Presiding Disciplinary Judge ("PDJ") conducted a sanctions hearing pursuant to C.R.C.P. 251.15(b). Kim E. Ikeler appeared on behalf of the People, Tamatha Ann Blasé, Respondent, was not present. The Hearing Board issues the following opinion:

## REPORT, DECISION AND IMPOSITION OF SANCTION PURSUANT TO C.R.C.P. 251.15(b)

### SANCTION IMPOSED: ATTORNEY DISBARRED

Respondent defaulted on a complaint charging that she engaged in a pattern of neglect, made misrepresentations to clients, failed to communicate with clients, misappropriated their funds, and abandoned her practice without protecting them. Under the *ABA Standards* and Colorado Supreme Court cases, disbarment is the presumptive sanction for such conduct when the client is harmed. Should this Court impose a lesser sanction than disbarment if Respondent has no prior discipline?

Upon consideration of the evidence, the Hearing Board finds that the facts and circumstances of this case support the presumptive sanction, disbarment.

## I. PROCEDURAL HISTORY AND BACKGROUND

This action arises out of four separate complaints. On November 20, 2003, the People initiated 03PDJ094, concerning Respondent's alleged misconduct on five client matters (the Boyd, Bertrand, Smith, White, and Sylvester matters). The People sent the Citation and Complaint to Respondent via regular and certified mail. The certified mailing was not claimed. Respondent did not file an answer.

On December 17, 2003, the People initiated 03PDJ106, concerning Respondent's alleged misconduct on a single client matter (the Coventry Farms matter). The People sent the Citation and Complaint to Respondent via regular and certified mail. The certified

mailing was not claimed. Respondent did not file an answer.

On January 21, 2004, the People initiated 04PDJ005, concerning Respondent's alleged misconduct on two client matters (the McCormick and Salgado matters). The People sent the Citation and Complaint to Respondent via regular and certified mail. The certified mailing was not claimed. Respondent did not file an answer.

On June 28, 2004, the People initiated 04PDJ070, concerning Respondent's alleged misconduct on two client matters (the Buckley and West matters). The People sent the Citation and Complaint to Respondent via regular and certified mail. Someone other than Respondent accepted the certified mailing. Respondent did not file an answer.

On July 27, 2004, pursuant to C.R.C.P. 251.15(b) and C.R.C.P. 121 § 1–14, the PDJ entered default judgment in 03PDJ094, 03PDJ106, and 04PDJ070. On October 15, 2004, the PDJ issued an order entering default judgment in 04PDJ070 and consolidating the four actions into the present case. The Office of Attorney Regulation Counsel ("OARC") sent a copy of this order, containing notice of the sanctions hearing, to Respondent via first class mail.

 By the entry of default, all *factual allegations* and *rule violations* set forth in the Complaint are deemed admitted, and are therefore established by clear and convincing evidence. *People v. Richards,* 748 P.2d 341, 347 (Colo.1987); *see also* Complaints, attached to this Opinion as Exhibits A. The underlying facts of this case are detailed in the Complaints and incorporated in this Opinion by reference. On the date of the sanctions hearing, Respondent failed to appear before the Hearing Board and offer evidence in mitigation. The People presented no additional evidence.

## II. FINDINGS AND VIOLATIONS

The Hearing Board considered the facts and violations established by the entry of default, as well as the People's argument for disbarment. Based on the foregoing, the Hearing Board makes the following findings and conclusions:

Respondent has taken and subscribed the oath of admission, was admitted to the bar of this Court on October 21, 1993, and is registered upon the official records of this Court (registration no. 23107). She is therefore subject to the jurisdiction of this Court in these disciplinary proceedings. C.R.C.P. 251.1(b).

In the Boyd matter, Mr. and Mrs. Boyd hired Respondent to represent them in a dispute over their home. When the opposing party filed a quiet title action against them, Respondent did file an answer and counterclaim on their behalf. After that, however, Respondent failed to provide disclosures, failed to participate in the case management order, failed to appear at status conferences, failed to comply with court orders, and failed to file critical motions.

As a result of Respondent's neglect, the trial court entered a default judgment against the Boyds, quieting title to the property in favor of the opposing party and evicting the Boyds from their home. In addition, the court entered a monetary judgment of nearly $40,000 against them. Respondent filed a motion to set aside the default judgment, but this motion was denied for failure to show good cause.

Despite her assurances to the Boyds, Respondent did not file an appeal and did not refer their case to another attorney. In fact, the Boyds never spoke with Respondent again, although they made daily attempts to contact her for at least a month and a half. Ultimately, the Boyds were forced to hire alternate counsel, who had to act quickly to preserve their appeal rights. Respondent has failed to return the Boyds' files and papers, and she has kept the unearned portion of their retainer.

In the Bertrand matter, Ms. Bertrand hired Respondent to represent her in a challenge to the ownership of her horse. Respondent advised Ms. Bertrand to wait for the opposing party to take action, and to contact her immediately if anything happened. When Ms. Bertrand received a demand letter threatening criminal theft charges and imposing an imminent deadline, she repeatedly attempted to contact Respon-

dent. Respondent never answered Ms Bertrand's urgent messages or ever communicated with her again. Respondent retained new counsel, who immediately filed a lawsuit on her behalf and eventually succeeded in gaining full ownership of the horse for Ms. Bertrand.

In the Smith matter, Ms. Smith hired Respondent to initiate and complete her divorce. Respondent took no action other than filing the petition for dissolution and a certification regarding parenting classes. She did not serve Mr. Smith, although he eventually filed a waiver of service. When the trial court issued a notice of dismissal for failure to prosecute, Respondent assured Ms. Smith that she would contact the court. She did nothing and, as a result, the case was dismissed for lack of prosecution. Thereafter, Respondent failed to assist Ms. Smith in moving forward with the divorce. After Ms. Smith retained a new attorney, she requested an accounting as well as the return of the unearned portion of her retainer. Respondent did not reply.

In the White matter, Mr. and Mrs. White hired Respondent when their horse was injured at a stable. Nearly one month after they agreed to issue a demand letter, Respondent sent the Whites a poorly written draft demand letter for their review. Thereafter, the Whites explicitly instructed Respondent to allow them to approve the final draft. They never received a copy of the final product, and had difficulty reaching Respondent. Respondent communicated with the Whites two more times, but then ceased all contact. Mr. White left her numerous messages via phone and fax. Eventually, he discovered that her voice mail was full and that her phone had been disconnected.

In the Sylvester matter, Ms. Sylvester hired Respondent to collect payment of approximately $40,000 for services that her construction company provided under a subcontractor agreement. Ms. Sylvester gave Respondent a file containing all the materials she had collected concerning the matter, without retaining any copies of these materials. Respondent assured Ms. Sylvester that they had plenty of time in which to file an action. But after Ms. Sylvester moved to Nebraska, Respondent ceased all communication. Ms. Sylvester repeatedly left messages for Respondent and received no response. When she returned to Colorado for the holidays, she unsuccessfully attempted to meet with Respondent to retrieve her materials and her retainer.

In the Coventry Farms matter, Respondent represented Coventry Farms in defending a lawsuit initiated by two other entities. After the parties reached a settlement agreement, Coventry Farms principals had difficulty contacting Respondent and were unable to retrieve the Coventry Farms files. As a result of Respondent's neglect of the case, there was a delay in executing the settlement agreement. Therefore, Coventry Farms was required to seek new representation to complete the settlement. In addition, Coventry Farms principals disputed Respondent's billing. They believed that Respondent had failed to account for a $6,500 payment. Instead of keeping the disputed amount separate, Respondent withdrew it from Coventry Farms' trust account for her own use. Coventry Farms brought suit against Respondent, alleging that she took $6,772.26 more than was owed to her from the trust account. In that case, Respondent failed to participate in court-ordered mediation. As sanction, the trial court entered a default judgment against her. Coventry Farms has not been able to collect this judgment.

In the McCormick matter, Mr. McCormick hired Respondent to file an agister's lien and/or a collection lawsuit on behalf of his business when boarding charges for two horses were not paid. Upon collection of her retainer fee, Respondent ceased all communication with Mr. McCormick. Eventually, he hired another attorney to inquire about the matter. Both Mr. McCormick and his new attorney's paralegal attempted to reach Respondent on numerous occasions, but Respondent did not reply. By letter, Mr. McCormick requested the return of his file, which included the boarding contract, and the retainer he had paid. The letter was returned as undeliverable. Respondent did not return the file or the retainer.

In the Salgado matter, Ms. Salgado hired Respondent to represent her and her daugh-

ter in a person injury case arising out of a car accident. Ms. Salgado gave Respondent the original documents relating to the case. For months, Ms. Salgado attempted to contact Respondent with no success. When she was able to make contact, she received no meaningful information from Respondent. Finally, Respondent informed Ms. Salgado that the insurance company had not responded to her letters. In fact, Respondent had never notified the insurance adjuster of the Salgados' injuries. Respondent then filed a civil action against the other driver on behalf of Ms. Salgado. Although Respondent represented to Ms. Salgado that she properly served the defendant, she had not. Thereafter, Respondent ceased all communication with Ms. Salgado, failing to respond to repeated efforts to contact her. As a result of Respondent's inaction, the trial court dismissed Ms. Salgado's case.

In the Buckley matter, Mr. Buckley hired Respondent to represent him in defending criminal charges involving the medical treatment of animals, as well as in defending related civil claims. Mr. Buckley pled guilty in the criminal case, an apparently satisfactory disposition. However, in the civil case, Respondent did not file an answer until well-after the plaintiff had moved for default judgment. Ultimately, the trial court struck the answer and entered default judgment against Mr. Buckley, with damages to be determined at a hearing. Despite her assurances to Mr. Buckley, Respondent failed to file a motion to vacate the default. In addition, she failed to notify Mr. Buckley of the damages hearing. Neither Respondent nor Mr. Buckley appeared, and thus the court entered judgment against Mr. Buckley for over $700,000 plus approximately $70,000 in interest. Mr. Buckley discovered the judgment when he was served with a Rule 69 deposition subpoena. Mr. Buckley then retained new counsel, who has filed a motion requesting relief from the default judgment and a stay on enforcement of the judgment.

In the West matter, Ms. West hired respondent to represent her in prosecuting a malpractice case against a veterinarian. After Respondent contacted the defendant's insurer, the insurer requested information about the claim a number of times. Respondent made no substantive response, and did not provide an updated address and telephone number where she could be reached. Ms. West was also unsuccessful in her efforts to contact Respondent. As a result of Respondent's inaction, the insurance company denied Ms. West's claim. Thereafter, Ms. West wrote a letter to Respondent, which included a request for the return of her retainer. Ms. West received no reply.

On these ten client matters, the Hearing Board finds that Respondent violated the following rules:

1. Colo. RPC 1.3 (neglect of an entrusted legal matter)
 a. Boyd matter, Claim I;
 b. Smith matter, Claim VI;
 c. Sylvester matter, Claim X;
 d. Coventry Farms matter, Claim I;
 e. McCormick matter, Claim I;
 f. Salgado matter, Claim V;
 g. Buckley matter, Claim I; and
 h. West matter, Claim IV.

2. Colo. RPC 1.4(a) (failure to keep client reasonably informed)
 a. Boyd matter, Claim II;
 b. Bertrand matter, Claim IV;
 c. White matter, Claim VIII;
 d. Sylvester matter, Claim XI;
 e. McCormick matter, Claim II;
 f. Salgado matter, Claim VI;
 g. Buckley matter, Claim II;
 h. West matter, Claim V.

3. Colo. RPC 1.15(c) (failure to keep disputed property separate until there is an accounting and severance of the disputed interest)
 a. Coventry Farms matter, Claim II.

4. Colo. RPC 1.16(d) (failure to take steps to protect a client's interest and surrender papers/property upon termination)
 a. Boyd matter, claim III;
 b. Bertrand matter, Claim V;
 c. Smith matter, Claim VII;
 d. White matter, Claim IX;
 e. Sylvester matter, Claim XII;

f. Coventry Farms matter, Claim III;

g. McCormick matter, Claim III;

h. Salgado matter, Claim VII;

i. Buckley matter, Claim III;

j. West matter, Claim VI.

5. Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation)

a. Coventry Farms matter, Claim IV;

b. McCormick matter, Claim IV;

c. Salgado matter, Claim VIII.

In each of these matters, Respondent's conduct caused injury or potential injury to her clients. The Hearing Board also finds a pattern and practice of failing to accomplish professional tasks for clients and failing to communicate with clients. The totality of the facts demonstrates that Respondent effectively deserted, rejected, and relinquished her professional responsibilities. Thus, her conduct constitutes abandonment.[1] In addition, when Respondent kept unearned fees[2] and made unauthorized withdrawals from a client trust account, she engaged in knowing conversion or misappropriation. *People v. Varallo*, 913 P.2d 1, 11 (Colo.1996) (knowing misappropriation occurs when a lawyer takes client money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking).

### III. SANCTIONS

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards* ") and Colorado Supreme Court case law are the authorities for selecting and imposing sanctions for lawyer misconduct. The appropriate sanction depends upon the specific facts and circumstances of the particular case.

**Analysis Under ABA *Standards***

ABA *Standard* 4.4 describes appropriate sanctions for "lack of diligence" (absent aggravating or mitigating circumstances). ABA *Standard* 4.41 provides that disbarment is generally appropriate when:

(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

ABA *Standard* 4.1 describes appropriate sanctions for "failure to preserve the client's property" (absent aggravating or mitigating circumstances). ABA *Standard* 4.11 provides that "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client."

However, the Hearing Board must carefully consider whether disbarment is proper for this particular case. In making this determination, ABA *Standard* 3.0 directs the Hearing Board to consider the following four factors:

(a) the duty violated;

(b) the lawyer's mental state; and

(c) the actual or potential injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

### 1. Duty

By neglecting legal matters entrusted to her as outlined above, Respondent violated one of the most fundamental duties an attorney owes to a·client, the duty to professional-

---

1. The Presiding Disciplinary Judge's opinions provide a test for abandonment in attorney discipline cases. *E.g. People v. Segal*, 62 P.3d 173, 176 (Colo.O.P.D.J.2002) (proof of abandonment requires, in addition to failure to accomplish specific tasks for clients and failure to communicate, evidence that attorney has deserted, rejected, or relinquished professional responsibilities).

While the PDJ's opinions offer guidance in these matters, they do not have precedential value. *In the Matter of Roose*, 69 P.3d 43, 48–49 (Colo. 2003).

2. Advances of unearned fees are the property of the client. Colo. RPC 1.5(f).

ly perform legal services on behalf of the client. In addition, Respondent's retention, in many cases, of documents and unearned or disputed fees constitutes a violation of the important duty to preserve client property. Respondent's actions also implicate her duties to the public, the profession, and the legal system, because her conduct was prejudicial to the administration of justice and involved dishonesty, fraud, deceit, or misrepresentation.

### 2. Mental State

Respondent's actual awareness is unknown, as she did not appear in this action. However, it has been established by default that Respondent knowingly agreed to represent ten clients and then neglected their cases. In addition, Respondent intentionally ignored client requests for the return of property. In the Coventry Farms matter, Respondent also intentionally ignored the client's claimed interest in funds withdrawn from the client's trust account. Thus, it is clear that Respondent should have been aware of the consequences of her actions.

### 3. Injury

Respondent's misconduct caused injury or potential injury to her clients, and in many cases the consequences of her actions were serious. In the Boyd matter, the clients lost their home and owe a monetary judgment in excess of $40,000 as a result of default entered on account of Respondent's neglect. In addition, the Boyds might have lost their right to appeal the judgment, if not for quick action by alternate counsel.

In the Bertrand matter, the client faced the potential loss of her horse. In the Smith matter, Respondent delayed the client's divorce. In the White matter, Respondent could have adversely affected the clients' settlement position. In the Sylvester matter, the client faced the loss of her right to relief, in part because Respondent retained all the materials concerning the case. In the Coventry Farms matter, Respondent delayed execution of the settlement agreement.

In addition, it has been established by default that Respondent took more than $6,000 in unauthorized funds from the client's trust account, forced the client to file suit in order to retrieve those funds, and left the resulting judgment unsatisfied.

In the McCormick matter, the client faced the loss of her right to relief, in part because Respondent did not return the contract entrusted to her. Mr. McCormick also had to hire another attorney to attempt to make contact with Respondent. In the Salgado matter, the trial court dismissed the client's case as a result of Respondent's inaction. In the Buckley matter, the client suffered a default judgment of over $770,000. In the West matter, the insurance company denied the client's claim because Respondent failed to provide the required information. In the Boyd, Smith, Sylvester, McCormick, and West matters, the clients lost the portion of their retainers that Respondent kept but did not earn.

### 4. Aggravating and Mitigating Factors

The Hearing Board finds the following **aggravating factors** under ABA *Standard* 9.22:

A. **Multiple offenses/Pattern of misconduct:** This matter involves ten separate client matters and numerous violations of the Rules of Professional Conduct. These facts constitute multiple offenses and a pattern of misconduct.

B. **Vulnerability of victims:** Clients are always vulnerable when a lawyer neglects the legal matters she was retained to handle. The Boyds were particularly vulnerable, as they faced eviction from their home and were ultimately given only 48 hours to vacate the premises. A large monetary judgment against them compounded their problems. Mr. Buckley was also notably vulnerable, for he faced liability for over half a million dollars. And Ms. Salgado and her daughter were injured in an automobile accident, yet they were left without legal recourse because the trial court dismissed their case. At a minimum, Respondent owed these especially vulnerable

clients notice that she would no longer represent them.

C. **Substantial experience in the practice of law:** Respondent was admitted to the bar in 1993. Thus, she has over ten years experience in the practice of law.

D. **Dishonest or selfish motive:** On the limited record before the Hearing Board, Respondent's motive is not particularly clear. However, the fact that Respondent's misconduct included taking client funds (unearned retainers and disputed amounts) for her own use supports the inference that Respondent had a dishonest or selfish motive.

E. **Indifference to making restitution:** While the People did not prove restitution amounts; Respondent has shown no indication of informally making restitution to her clients.

The Hearing Board does not find a **bad faith obstruction,** despite the fact that Respondent did not participate in OARC's investigation or these proceedings. According to the Colorado Rules of Civil Procedure, the People are entitled to a default under these circumstances. C.R.C.P. 251.15(b). The PDJ granted the People's motion for default. However, the record is insufficient to support a finding that Respondent's failure to participate was motivated by an effort to intentionally obstruct these proceedings.

The Hearing Board finds the following *mitigating factors* under ABA *Standard* 9.32:

A. **No prior discipline.** Respondent has no prior disciplinary record.

### Analysis Under Case Law

■ Colorado Supreme Court cases applying the ABA *Standards* support disbarment when there is abandonment plus other factors, such as numerous *client* incidents and/or other serious misconduct.[3]

■ When an attorney knowingly misappropriates client funds, the presumptive sanction is disbarment. In fact, lawyers are "almost invariably disbarred" for such conduct. *Varallo,* 913 P.2d at 11; *People v. McGrath,* 780 P.2d 492, 493 (Colo.1989) (the Court would not hesitate to enter an order of disbarment if there was no doubt that the attorney engaged in a knowing conversion of his client's funds); *People v. Dice,* 947 P.2d 339 (Colo.1997) ("[w]e have repeatedly held that a lawyer's knowing misappropriation of funds . . . warrants disbarment except in the presence of extraordinary mitigating factors").

■ In addition, disbarment is considered an appropriate sanction in cases involving a pattern of neglect. In *People v. Murray,* 887 P.2d 1016 (Colo.1994), the Supreme Court determined that knowing failure to perform services for clients in ten separate matters constituted a pattern of neglect. As a result, and because the attorney caused potentially serious harm to the clients, the attorney was disbarred. *See also People v. Dulaney,* 785 P.2d 1302 (Colo.1990) (lawyer disbarred for chronic neglect of client matters and use of deceit to cover the neglect).

3. *E.g. People v. Williams,* 845 P.2d 1150 (Colo. 1993) (lawyer disbarred for neglecting legal matter, failing to return client's retainer, evading service of process, failing to respond to request for investigation, and abandoning practice); *People v. Tucker,* 904 P.2d 1321 (Colo.1995) (lawyer disbarred after abandoning clients while continuing to collect fees for work never performed); *People v. Steinman,* 930 P.2d 596 (Colo.1997) (lawyer disbarred for accepting fees then abandoning clients and causing serious harm while failing to return the fees); *People v. Kuntz,* 942 P.2d 1206 (Colo.1997) (lawyer disbarred after accepting legal fees in eight separate client matters, performing minimal services, and then abandoning the clients while misappropriating the unearned fees); *People v. Townshend,* 933 P.2d 1327 (Colo.1997) (lawyer who had previously received letter of admonition and private censure disbarred for accepting advance fees from two clients then abandoning them without returning or accounting for unearned fees); *People v. Valley,* 960 P.2d 141 (Colo.1998) (lawyer disbarred for abandoning law practice, disregarding court orders, and making misrepresentations to clients, where aggravating factors included previous discipline, dishonest or selfish motive, indifference to restitution, vulnerable victims, substantial legal experience, multiple offenses, a pattern of misconduct, and bad faith obstruction of disciplinary proceedings).

Hearing boards have also disbarred attorneys when the misconduct includes failure to communicate with clients. *E.g. People v. Miller*, 35 P.3d 689 (Colo.O.P.D.J.2001) (attorney disbarred for misconduct including failure return client phone calls and failure to keep clients reasonably informed). While these opinions are not binding upon this Court, they do provide guidance. *In the Matter of Roose*, 69 P.3d 43, 48–49 (Colo. 2003).

## IV. CONCLUSION

Although the record in this case is sparse, consisting only of the admitted Complaints, there is no question that Respondent violated her professional responsibilities to ten clients, thus posing a danger to the public. Respondent engaged in a pattern of neglect, made misrepresentations to clients regarding actions taken, ceased communicating with clients, abandoned practice without protecting client interests, misappropriated client property, and failed to participate in these proceedings. There is also no question that, as a result of her misconduct, Respondent caused her clients harm or potential harm. In fact, the harm faced by some clients was quite serious. Under such circumstances, the ABA *Standards* and the Supreme Court cases support disbarment. In view of the extent of Respondent's misconduct and the number of clients affected, the absence of prior discipline as the sole mitigating factor is insufficient to warrant a lesser sanction.

Therefore, upon consideration of the duties violated, Respondent's mental state, the actual or potential injuries caused, and the aggravating and mitigating circumstances, the Hearing Board concludes that Respondent should be disbarred from the practice of law.

## V. ORDER

It is therefore ORDERED:

1. TAMATHA ANN BLASÉ, attorney registration 23107, is DISBARRED from the practice of law, effective thirty-one (31) days from the date of this Order, and her name shall be stricken from the roll of attorneys licensed to practice law in the State of Colorado.

2. TAMATHA ANN BLASÉ is ORDERED to pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days in which to file a response.

### EXHIBIT A

### COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

#### Jurisdiction

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on October 21, 1993 and is registered upon the official records of this court, registration no. 23107. She is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is P.O. Box 803, Lafayette, CO 80026. A more recent address is P.O. Box 767, Littleton, CO 80160.

#### General Allegations

#### Boyd Matter

2. David Boyd and his wife, Kendra, purchased a home from Kendra's mother, Linda Hayes, in 2001. Shortly thereafter, a conflict arose between the Boyds and Ms. Hayes. In early May 2001, the Boyds retained the respondent to represent them in the dispute with Kendra's mother. The Boyds believe they paid the respondent a retainer of about $200. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that she would provide the services in accordance with the Colorado Rules of Professional Conduct.

3. On August 28, 2001, Linda Hayes filed a quiet title action in Adams County District Court against the Boyds. The respondent filed an answer and counterclaim on their

behalf. The matter was set for trial on June 17, 2002.

4. The respondent did not provide disclosures to opposing counsel or participate in the preparation of the case management order. To resolve the lack of participation on the part of the respondent, the court set a status conference on March 4, 2002. Notice of the status conference was sent to respondent.

5. The respondent did not appear at the status conference on March 4, 2002. The judge stated on the record that since the filing of the answer and counterclaim, there had been no participation by the Boyds. The court ordered the respondent to contact plaintiff's counsel within 15 days to assist in the preparation of the case management order and provide opposing counsel with disclosures. The court warned that if the respondent did not comply, a default may be entered against the Boyds. The respondent did not comply with the court order.

6. On March 25, 2002, counsel for Ms. Hayes filed a motion to strike the Boyd's answer and counterclaim.

7. On March 28, 2002, the court granted the motion to strike. Default was entered against the Boyds.

8. In about April 2002, the respondent called the Boyds and stated that a default had been entered against them. She assured them that she would file a motion to vacate the default. She failed to file that motion.

9. On May 15, 2002, Ms. Hayes' counsel filed a motion for default judgment against the Boyds. The court set a status conference on May 20, 2002.

10. On May 20, 2002, the respondent failed to appear. The court entered a default judgment against the Boyds quieting title to their property. Ms. Hayes was declared the owner of the property. The judge ordered judgment for possession in favor of Ms. Hayes. He ordered the Boyds to remove themselves from the premises within 48 hours. Monetary damages in favor of Ms. Hayes and against the Boyds were ordered in the amount of $25,977.73, plus interest.

Punitive damages in the amount of $5,000 were awarded. Attorney's fees in the amount $10,160 were also awarded. The total amount of the award was $39,410.14.

11. On May 23, 2002, Ms. Hayes' attorneys filed a certificate of service with the court verifying that the respondent had been served with the order of default judgment.

12. On June 7, 2002, the respondent filed a motion to set aside the default judgment.

13. On July 10, 2002, the court ruled that the respondent had not shown good cause why the court should set aside the order for default judgment.

14. On about July 18, 2002, the respondent called the Boyds and stated that her motion to vacate the default judgment had been denied and that she would appeal. The Boyds never heard from her again.

15. The Boyds called the respondent every day, sometimes twice a day for at least one month and a half. They sent her emails and traveled to her office and left notes for the respondent to contact them. The respondent called the Boyds only once, leaving a message that she had talked to an attorney who could help on the appeal and that he would call them. The Boyds received no call from that attorney. The respondent again never communicated with the Boyds.

16. David Boyd called the court clerk thereafter and learned that no appeal had been filed and the Boyds had only four days to file their appeal. They immediately hired another attorney, who filed the appeal timely.

### CLAIM I

**[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]**

17. Paragraphs 1 through 16 are incorporated herein as if fully set forth.

18. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

19. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter in each of the following respects:

a) Respondent neglected the Boyds' quiet title matter by failing to provide disclosures to opposing counsel and failing to participate in the drafting of the case management order, with the result that a default was entered against them.

b) Respondent failed to move to vacate the default.

c) Respondent failed to appear for the status conference concerning the motion for default judgment filed by opposing counsel, with the result that default judgment was entered against the Boyds.

d) The Boyds lost their interest in the property, were evicted, and suffered the entry of a monetary judgment against them in the $10,000's. Respondent promised to appeal the default judgment, but did not do so.

The respondent was required to complete each of the specific tasks described above. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

20. The respondent knew or should have known that her lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

21. The respondent's lack of diligence and promptness, and/or neglect caused serious or potentially serious injury to the clients.

22. The respondent's pattern and practice of failing to accomplish her professional tasks for the clients, coupled with the failure to communicate with the clients, constitutes abandonment of the professional responsibilities owed to the clients. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the clients.

23. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM II

**[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information— Colo. RPC 1.4(a)]**

24. Paragraphs 1 through 16 are incorporated herein as if fully set forth.

25. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

26. This respondent failed to keep her clients reasonably informed about the status of their legal matters and failed to comply promptly with reasonable requests for information in the following respects:

a. Respondent failed to respond to repeated inquiries from the Boyds over many weeks about their appeal.

b. Respondent then called, leaving a message that another attorney would call them. Respondent then ended all communication with the Boyds.

Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

27. The respondent knew or should have known that she had failed to communicate adequately with her clients over an extended period of months.

28. The respondent's pattern and practice of failing to communicate with the clients caused serious or potentially serious injury to the clients.

29. The respondent's failure to communicate on these matters, coupled with the failure to accomplish professional tasks on behalf of the clients, constitutes abandonment of the professional responsibilities owed to the clients. The totality of facts demonstrates that the respondent effectively des-

erted, rejected and /or relinquished the professional responsibilities owed to the clients.

30. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM III

[**Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d)** ]

31. Paragraphs 1 through 16 are incorporated herein as if fully set forth.

32. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

33. The respondent effectively terminated the attorney-client relationships with the Boyds by failing to communicate with the clients despite the clients' numerous attempts to communicate with the respondent, and by failing to take any other action on behalf of the clients.

34. The respondent failed to give the Boyds notice that she had abandoned the representation, failed to advise the clients to obtain other counsel, and otherwise failed to take steps to protect the client's interest.

35. Respondent failed to return the clients' files and papers despite the Boyds' calls and e-mails to her.

36. The respondent failed to return to the clients any portion of their retainer, not all of which had been earned.

37. By such conduct, the respondent violated Colo. RPC 1.16(d).

### Bertrand Matter

38. Sherry Bertrand and her husband are rodeo performers. They have a horse that is a champion barrel racing and roping horse. Ms. Bertrand originally bought the horse with another person. However, the ownership documentation was in Ms. Bertrand's name. The part-owner essentially abandoned the horse in the mid–1990s.

39. In about November 2002, after the horse began winning rodeo events, the part owner threatened to file criminal charges against Ms. Bertrand for theft of the horse. Ms. Bertrand found the respondent's name in the telephone book under equine attorneys. She consulted with others, who recommended the respondent as an attorney.

40. On November 15, 2002, Ms. Bertrand met with the respondent at her office. She explained the situation and gave the respondent copies of all pertinent documents. Ms. Bertrand gave the respondent a check in the amount of $500 as a retainer. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that she would provide the services in accordance with the Colorado Rules of Professional Conduct.

41. Ms. Bertrand executed a fee agreement, but the respondent declined to give her a copy, stating that it would be mailed later. The respondent never sent a copy of the fee agreement to Ms. Bertrand.

42. The respondent advised Ms. Bertrand to attend a scheduled brand board meeting and then call her. After the brand board meeting, at which Ms. Bertrand gained no satisfaction, she called the respondent. She was advised by the respondent to let the other part owner make the first move and to call the respondent immediately if anything happened.

43. In January 2003, Ms. Bertrand and her husband attended the National Western Stock Show and Rodeo. While there, they ran into the part owner. Within days, the Bertrands received a demand letter from the part owner's attorney giving her 15 days to turn over the horse or she would be criminal-

ly charged with theft. That same day, January 20, 2003, Ms. Bertrand called the respondent's work number. It was no longer in service. Ms. Bertrand called the respondent's cell number and left an urgent message for her to call. The respondent did not respond. Ms. Bertrand left message after message on the respondent's cell phone, with no response from the respondent.

44. Finally the message on the respondent's cell phone stated that she had moved offices. It gave another office number to call. Ms. Bertrand called that number and left urgent messages. The respondent did not respond.

45. Ms. Bertrand was forced to retain new counsel due to the imminent deadline. After she retained the new counsel, Ms. Bertrand continued to call the respondent and leave messages. The respondent has never communicated with Ms. Bertrand.

46. Ms. Bertrand's new counsel filed an immediate lawsuit and she eventually gained full ownership of the horse.

### CLAIM IV

**[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a) ]**

47. Paragraphs 38 through 46 are incorporated herein as if fully set forth.

48. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

49. This respondent failed to keep her client reasonably informed about. the status of her legal matters and failed to comply promptly with reasonable requests for information. Respondent failed to respond to Ms. Bertrand's many calls and messages about the challenge to her ownership of her horse. Ms. Bertrand was required to hire new counsel to handle the matter. Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

50. The respondent knew or should have known that she had failed to communicate adequately with her client over an extended period of months.

51. The respondent's pattern and practice of failing to communicate with the client caused serious or potentially serious injury to the client.

52. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM V

**[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]**

53. Paragraphs 38 through 46 are incorporated herein as if fully set forth.

54. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

55. The respondent effectively terminated the attorney-client relationship by failing to communicate with Ms. Bertrand despite Ms. Bertand's numerous attempts to communicate with the respondent, and by failing to take any other action on behalf of Ms. Bertrand.

56. The respondent failed to give Ms. Bertrand notice that she had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest.

57. The respondent failed to return to Ms. Bertrand any portion of her retainer, not all of which had been earned.

58. By such conduct, the respondent violated Colo. RPC 1.16(d).

 

## Smith Matter

59. On July 13, 2001, Kelly Smith retained the respondent to file a divorce on her behalf. She executed a fee agreement and sent the respondent a $1000 retainer. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that she would provide the services in accordance with the Colorado Rules of Professional Conduct.

60. Ms. Smith never received monthly billings or any accounting as mandated by the fee agreement.

61. On July 18, 2001, the respondent sent a letter to Ms. Smith enclosing the final version of the petition for dissolution. She asked Ms. Smith to sign the petition, have it notarized and returned to her.

62. On September 4, 2001, the respondent filed the Petition for Dissolution in Jefferson District Court under Case No. 01DR02580. The court issued the mandatory parenting class order.

63. In November 2001, Ms. Smith attended the mandatory parenting class in Case No. 01DR02580.

64. Apparently, the respondent did not serve Mr. Smith. Nothing else in the case was filed except Ms. Smith's certification that she attending parenting class, until March 14, 2002.

65. On March 14, 2002, the respondent filed a waiver of service signed by Cliff Smith on March 8, 2002.

66. On July 2, 2002, the court issued a notice of dismissal for failure to prosecute.

67. In July 2002, Ms. Smith received a notice from the court stating that her matter would be dismissed due to lack of prosecution. Ms. Smith contacted the respondent, who assured her she would contact the court. The respondent did nothing.

68. On August 5, 2002, the court dismissed Case No. 01DR02580 for lack of prosecution.

69. On September 11, 2002, attorney Richard Lonnquist sent Ms. Smith a letter stating that her husband had retained him. Enclosed were the summons and petition for dissolution. Mr. Lonnquist asked Ms. Smith to accept service. Apparently Mr. Lonnquist never filed the case with the court.

70. Also in November 2002, Ms. Smith met with the respondent and gave her the petition served by her husband. Thereafter when Ms. Smith contacted the respondent, the respondent told her that the case was stalled due to her husband's attorney's inaction.

71. In February 2003, Ms. Smith retained a new attorney. On February 13, 2003, Ms. Smith sent a letter to the respondent requesting the return of her retainer. On March 21, 2003, Ms. Smith sent a letter to the respondent requesting an accounting. There has been no reply.

### CLAIM VI

**[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]**

72. Paragraphs 59 through 71 are incorporated herein as if fully set forth.

73. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

74. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter in each of the following respects:

a. Respondent neglected Ms. Smith's divorce matter by failing to file anything in the case except Ms. Smith's parenting class certificate and Mr. Smith's waiver of service. As a result, the divorce court issued a notice of dismissal for failure to prosecute.

b. Despite Ms. Smith's request that respondent avoid dismissal, respondent did nothing and the divorce court dismissed the case.

The respondent was required to complete each of the specific tasks described above. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

75. The respondent knew or should have known that her lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

76. The respondent's lack of diligence and promptness, and/or neglect caused serious or potentially serious injury to the client.

77. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM VII

**[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]**

78. Paragraphs 59 through 71 are incorporated herein as if fully set forth.

79. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

80. The respondent effectively terminated the attorney-client relationship by failing to take action on behalf of Ms. Smith.

81. The respondent failed to give Ms. Smith notice that she had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest.

82. The respondent failed to return to Ms. Smith any portion of her retainer, not all of which had been earned.

83. By such conduct, the respondent violated Colo. RPC 1.16(d).

### White Matter

84. In about October 2002, complainant Al White's horse was injured at a stable in Conifer. He and his wife wanted to explore suing the owner of the stable, Laura Pachenco of Tandem Farms. He looked in a telephone book for lawyers and the respondent's name was listed under equine law. Mr. White called the respondent and she appeared very knowledgeable about horses. They talked several times about the Whites' claim and she was very forthcoming and attentive, calling them several times and quickly returning calls. The respondent advised Mr. White that his claim was a "textbook" case that would probably be settled by the end of 2002. The respondent sent the Whites a fee agreement.

85. On November 11, 2002, Mr. White retained the respondent to make demand on Ms. Pachenco. The Whites executed the fee agreement and sent a $1000 retainer by check. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that she would provide the services in accordance with the Colorado Rules of Professional Conduct.

86. The Whites never met with the respondent. Their communication was only through faxes and telephone calls.

87. Thereafter the respondent was not attentive. Finally, on December 6, 2002, the respondent sent a draft demand letter to the Whites by fax. Mr. White contends that the letter was poorly written. The Whites made changes and sent the demand back to the respondent. They sent explicit instructions for the respondent to send them a copy of the final product before it went out to Pachenco. They never received a copy of the final draft. Thereafter, the Whites tried to get in touch with the respondent with little success.

88. In January 2003, the respondent told Mr. White that she had sent the letter to

 

Pachenco on December 17, 2002 and had located a witness for their side. She also stated she would send another letter to the property owner stating a deadline of February 22, 2003 for a response or a lawsuit would be filed.

89. Mr. White thereafter left numerous messages for the respondent on her office and cell telephones. He also sent the respondent faxes. She did not respond.

90. On April 8, 2003, the respondent finally called Mr. White and left a message that no one had responded to her demand letters and that he should consider filing a lawsuit. Although Mr. White returned the call, her voicemail was full and her telephone had been temporarily disconnected. The respondent has never contacted him again.

### CLAIM VIII

[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information— Colo. RPC 1.4(a) ]

91. Paragraphs 84 through 90 are incorporated herein as if fully set forth.

92. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

93. This respondent failed to keep her clients reasonably informed about the status of their legal matters and failed to comply promptly with reasonable requests for information in the following respects:

 c. Respondent failed to adequately communicate with Mr. White about the demand letter to the owner of Tandem Farms. Respondent did not honor Mr. White's instructions to send the final draft to him for review before mailing it to the owner of Tandem Farms.

 d. Respondent also failed to timely respond to Mr. White's numerous phone calls and faxes. When respondent finally did leave a message for Mr. White, he called her, only to find that her voicemail was full

and that her telephone had been disconnected.

Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

94. The respondent knew or should have known that she had failed to communicate adequately with her clients over an extended period of months.

95. The respondent's pattern and practice of failing to communicate with the client caused serious or potentially serious injury to the clients.

96. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM IX

[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]

97. Paragraphs 84 through 90 are incorporated herein as if fully set forth.

98. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

99. The respondent effectively terminated the attorney-client relationship by failing to communicate with the Whites despite Mr. White's numerous attempts to communicate with the respondent, and by failing to take any other action on behalf of the Whites.

100. The respondent failed to give the Whites notice that she had abandoned the representation, failed to advise the clients to obtain other counsel, and otherwise failed to take steps to protect the clients' interest.

101. The respondent failed to return to the Whites any portion of their retainer, not all of which had been earned.

102. By such conduct, the respondent violated Colo. RPC 1.16(d).

### Sylvester Matter

103. Jan Sylvester once owned a construction company. In 1998, she entered into a subcontractor agreement with Cyrus G. Delano Company, Inc. to provide contractor services. By 1999, it became evident to Ms. Sylvester that Mr. Delano was not going to pay her for services performed. She hired Wells Love & Scoby and the matter was set for arbitration in 2000. The arbitration did not occur at that time because Mr. Delano, an elderly man, became ill. Ms. Sylvester contends that her lawyers advised her that the arbitration should not proceed due to his illness. Ms. Sylvester contends that the arbitration could have proceeded because she was suing a corporation and Mr. Delano was not an officer of the company at that time. Nonetheless, no arbitration occurred. As a result of not being paid, Ms. Sylvester contends she lost her business and credit. She terminated Wells Love and Scoby.

104. In February 2002, Mr. Delano died. Ms. Sylvester contends that she was owed approximately $40,000 from his company. She states that she tried to work with Mr. Delano's daughter for payment, but was ultimately unable to reach an agreement.

105. Ms. Sylvester met the respondent through Terry Filloon, who rented a house and acreage with the respondent. In about July 2002, Ms. Sylvester started boarding her horses on that property. She had a verbal agreement with both Ms. Filloon and the respondent to pay for the boarding.

106. At that same time, July 2002, Ms. Sylvester separately retained the respondent to represent her in filing a claim against the Cyrus Delano estate. She gave the respondent $800 cash as a retainer. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that she would provide the services in accordance with the Colorado Rules of Professional Conduct.

107. Ms. Sylvester believes she received a receipt for her $800 retainer, although she does not have it in her possession now. She also delivered to the respondent a "huge" file containing all of the materials she had collected regarding the Delano matter. Ms. Sylvester did not retain copies of any of the materials given to the respondent.

108. Ms. Sylvester contends that the respondent told her that she was entitled to file a claim against the Delano estate, but that they had plenty of time in which to file. There was no written fee agreement between them, but Ms. Sylvester believes the respondent told her that the hourly fee would be either $125 or $150.

109. In September 2002, Ms. Sylvester moved to Nebraska. She removed her horses from the respondent and Ms. Filloon's rented property the first week of October 2002. Ms. Sylvester believes that at the most, she still owes the respondent $200 for boarding the horses. However, there was no agreement between her and the respondent to apply any portion of the $800 retainer to the horses' board.

110. Thereafter, Ms. Sylvester was completely unable to get in touch with the respondent. She left messages on the respondent's home, work and cell telephone numbers. The respondent never returned her calls. Ms. Sylvester returned to Colorado during the 2002 Christmas holiday and left a message asking the respondent to meet with her and return the materials and her retainer. The respondent failed to do so. Ms. Sylvester was worried that there would be a time limit for filing a claim. She has not spoken to or heard from the respondent since.

### CLAIM X

**[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]**

111. Paragraphs 103 through 110 are incorporated herein as if fully set forth.

112. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

113. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter in the following respect: Respondent neglected Ms. Sylvester's claim against Mr. Delano's company by failing to take action of any sort, including filing a claim with Mr. Delano's estate.

114. The respondent knew or should have known that her lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

115. The respondent's lack of diligence and promptness, and/or neglect caused serious or potentially serious injury to the client.

116. The respondent's pattern and practice of failing to accomplish her professional tasks for the client, coupled with the failure to communicate with Ms. Sylvester, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

117. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XI

[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a) ]

118. Paragraphs 103 through 110 are incorporated herein as if fully set forth.

119. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

120. This respondent failed to keep her client reasonably informed about the status of her legal matters and failed to comply promptly with reasonable requests for information in the following respects: respondent failed to respond to Ms. Sylvester's many calls and messages concerning her claims against Mr. Delano's company. Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

121. The respondent knew or should have known that she had failed to communicate adequately with her client over an extended period of months.

122. The respondent's pattern and practice of failing to communicate with the client caused serious or potentially serious injury to the client.

123. The respondent's failure to communicate on these matters, coupled with the failure to accomplish professional tasks on behalf of the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and /or relinquished the professional responsibilities owed to the client.

124. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM XII

[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]

125. Paragraphs 103 through 110 are incorporated herein as if fully set forth.

126. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which

the client is entitled, and refunding any advance payment of fee that had not been earned.

127. The respondent effectively terminated the attorney-client relationship by failing to communicate with Ms. Sylvester despite her numerous attempts to communicate with the respondent, and by failing to take any other action on behalf of Ms. Sylvester.

128. The respondent failed to give the client notice that she had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest.

129. Ms. Sylvester requested her files from respondent. Respondent failed to return the client's files and papers despite demands and requests to do so.

130. The respondent failed to return to the client any portion of her retainer, not all of which had been earned.

131. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified above; the respondent be appropriately disciplined for such misconduct; the respondent be required to refund fees to the clients, and/or the client protection fund pursuant to C.R.C.P. 252.14(b); the respondent be required to return client files; the respondent be required to take any other remedial action appropriate under the circumstances; and the respondent be assessed the costs of this proceeding.

## COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

### Jurisdiction

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on October 21, 1993, and is registered upon the official records of this court, registration no. 23107. She is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is P.O. Box 767, Littleton, CO 80160.

### General Allegations

2. Respondent was a sole practitioner, specializing in equine law. At one point respondent represented an entity known as Coventry Farms in litigation against entities known as Hilltop Office Park, LLC and Stanisz Design and Construction, Inc. (collectively "Hilltop"). An attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that she would provide the services in accordance with the Colorado Rules of Professional Conduct.

3. At the close of that representation, principals of the client had difficulty contacting respondent. They were unable to retrieve the client files and disputed respondent's billing, which they claimed did not take into account a $6,500 payment to respondent.

4. The principals believed that respondent owed them a total of approximately $9,000. Respondent had not paid Coventry Farms a portion of this amount that she owed Coventry Farms for rent and boarding her horses. Respondent also had withdrawn the disputed approximately $6,500 amount from settlement monies paid by Hilltop that had been held in respondent's trust account. Respondent withdrew these monies without the client's authority to do so.

5. On December 12, 2002, Coventry Farms sued respondent. Coventry Farms retained Donald R. Knight, Esq., to represent it in this suit. The case was styled *Coventry Farms, Inc., a Colorado corporation; Dan Brost and Joyce Brost, individuals; and Kris McConnell and Jim McConnell, individuals, Plaintiffs v. Tamatha A. Blasé, an individual; and/or Tamatha A. Blasé, P.C., Attorneys and Counselors at Law,* Arapahoe County County Court, Case No. 02C117121 (the "County Court litigation"). Coventry Farms claimed, *inter alia,* that, while representing Coventry Farms, respondent took $6,772.26 from her trust ac-

count above and beyond the amounts owed her by the plaintiffs.

6. The judge in the County Court litigation ordered respondent to participate in mediation. The judge stated that, if respondent failed to do so, she would be subject to sanctions including the entry of default judgment. Respondent failed to participate in mediation and the plaintiffs moved for entry of default judgment.

7. On August 11, 2003 the judge in the County Court litigation entered default judgment against respondent, including for $6,772.26 based on respondent's unauthorized payment of that amount to herself out of trust funds she held for the plaintiffs as their attorney. The plaintiffs have not been able to collect this judgment.

8. Coventry Farms also was required to retain Mr. Knight to represent it in completing the settlement in the Hilltop litigation. Among other things, Mr. Knight managed to persuade Hilltop not to enforce an award of attorneys fees which the court entered against Coventry Farms for failing to provide an executed copy of the settlement agreement to Hilltop (the delay in executing the settlement agreement occurred while respondent was representing Coventry Farms and was due to respondent's abandonment of the case). Coventry Farms incurred attorneys fees for Mr. Knight's work in this regard.

### CLAIM I

[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]

9. Paragraphs 1 through 8 are incorporated herein as if fully set forth.

10. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

11. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter. Respon-

dent did not act with reasonable diligence and promptness in providing an executed copy of the settlement agreement in the Hilltop litigation to the opposing party. Instead, respondent abandoned the case. As a result, the court entered an award of attorneys fees against the client, Coventry Farms.

12. The respondent knew or should have known that her lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

13. The respondent's lack of diligence and promptness, and/or neglect caused injury or potential injury to the client.

14. The respondent's pattern and practice of failing to accomplish her professional tasks for the client, coupled with the failure to communicate with the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

15. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM II

[Failing to Keep Disputed Property Separate Until There is an Accounting and Severance of the Disputed Interest—Colo. RPC 1.15(c) ]

16. Paragraphs 1 through 8 are incorporated herein as if fully set forth.

17. Rule 1.15(c), Colorado Rules of Professional Conduct, provides: "When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved."

18. Respondent failed to keep the disputed $6,500 amount—which Coventry Farms claimed it already had paid respondent—in her trust account. Instead, she disbursed it to herself out of the settlement monies from the Hilltop litigation.

19. By such conduct, the respondent violated Colo. RPC 1.15(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM III

[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]

20. Paragraphs 1 through 8 are incorporated herein as if fully set forth.

21. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

22. Respondent abandoned the Hilltop litigation. She did not return to the clients their files. She did not retain in her trust account the disputed approximately $6,500 but instead disbursed it to herself. Coventry Farms was required to hire complainant to complete the Hilltop litigation, and thereby incurred attorneys fees.

23. The respondent effectively terminated the attorney-client relationship by failing to communicate with the client despite the client's numerous attempts to communicate with the respondent, and by failing to take any other action on behalf of the client.

24. The respondent failed to give the client notice that she had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest.

25. Respondent failed to return the client's files and papers.

26. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM IV

[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Conversion)—Colo. RPC 8.4(c) ]

27. Paragraphs 1 through 8 are incorporated herein.

28. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

29. Although respondent knew or reasonably should have known that the approximately $6,500 was disputed and was not then due to her, respondent disbursed the $6,500 amount to herself out of the settlement monies from the Hilltop litigation.

30. Respondent knew or reasonably should have known that she was keeping the approximately $6,500 of funds she had not earned, knowing that such funds should be returned to her client or, at the least, retained in trust because there was a dispute as to whether she had earned them.

31. The respondent did not have permission from the client or a court to use the client's (disputed) funds for her personal purposes.

32. Through the unauthorized exercise of dominion or ownership these funds, the respondent converted or misappropriated such funds.

33. Through her conversion or misappropriation of client (or disputed) funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

34. The foregoing conduct of the respondent establishes grounds for discipline as provided for in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the people pray that the respondent be found to have engaged in mis-

conduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified above; the respondent be appropriately disciplined for such misconduct; the respondent be required to refund fees to the client, and/or the client protection fund pursuant to C.R.C.P. 252.14(b); the respondent be required to return client files; the respondent be required to take any other remedial action appropriate under the circumstances; and the respondent be assessed the costs of this proceeding.

## COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

### Jurisdiction

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on October 21, 1993, and is registered upon the official records of this court, registration no. 23107. She is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is P.O. Box 803, Lafayette, CO 80026. A more recent address is P.O. Box 767, Littleton, CO 80160.

### General Allegations

### McCormick Matter

2. Monte McCormick ("McCormick") does business in Bennett, Colorado, under the name of "Lost Creek Quarter Horses". As part of his business, he boarded two horses owned by third parties, pursuant to a contract for such services. Beginning in April 2002, the third parties did not pay the $300 per month boarding charges.

3. In November 2002, McCormick retained respondent to assert an agister's lien and/or file a collection lawsuit against the third parties. McCormick paid respondent $500 as a retainer. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that she would provide the services in accordance with the Colorado Rules of Professional Conduct.

4. After McCormick paid respondent the retainer, he did not hear from her. McCormick attempted to reach respondent on many occasions. Eventually, McCormick hired another attorney, Donald Peterson, to inquire about the status of respondent's work on the collection matter. Mr. Peterson wrote to respondent in late March 2003. Around the same time, his paralegal attempted to reach respondent by phone and e-mail. Respondent did not reply.

5. In June 2003 McCormick wrote to respondent, terminating her services. McCormick requested that respondent return the file, including the boarding contract. McCormick also requested a refund of his retainer. The letter was returned as undeliverable.

6. Respondent did not return the file and did not return the retainer.

### CLAIM I

[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]

7. Paragraphs 1 through 6 are incorporated herein as if fully set forth.

8. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

9. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter in each of the following respects: respondent neglected McCormick's collection matter, failed to take any action on his behalf during the course of an eight month time period, and abandoned his case.

10. The respondent knew or should have known that her lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

11. The respondent's lack of diligence and promptness, and/or neglect caused injury or potential injury to the client, in that McCormick's collection action was delayed.

12. The respondent's pattern and practice of failing to accomplish her professional tasks for the client, coupled with the failure to communicate with the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

13. By such conduct, the respondent violated Colo. RPC 1.3.

14. WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM II

[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information— Colo. RPC 1.4(a) ]

15. Paragraphs 1 through 6 are incorporated herein as if fully set forth.

16. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

17. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respects. Respondent did not communicate with McCormick, did not return his calls, did not respond to Mr. Peterson's letter or his paralegal's e-mail or call, and did not respond to McCormick's termination letter. Instead, respondent moved and then closed her office without notifying the client that she had done so. Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

18. The respondent knew or should have known that she had failed to communicate with her client over an extended period of months.

19. The respondent's pattern and practice of failing to communicate with the client caused injury or potential injury to the client, in that McCormick's collection action was delayed.

20. The respondent's failure to communicate on these matters, coupled with the failure to accomplish professional tasks on behalf of the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and /or relinquished the professional responsibilities owed to the client.

21. By such conduct, the respondent violated Colo. RPC 1.4(a).

22. WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM III

[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]

23. Paragraphs 1 through 6 are incorporated herein as if fully set forth.

24. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

25. The respondent effectively terminated the attorney-client relationship by failing to communicate with the client despite the client's numerous attempts to communicate with the respondent, and by failing to take any other action on behalf of the client.

26. The respondent failed to give the client notice that he had abandoned the representation, failed to advise the client to ob-

tain other counsel, and otherwise failed to take steps to protect the client's interest.

27. McCormick made requests for his file from respondent. Respondent failed to return the client's files and papers despite demands and requests to do so.

28. The respondent failed to return to the client any portion of the $500 retainer, none of which had been earned.

29. By such conduct, the respondent violated Colo. RPC 1.16(d).

30. WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM IV

**[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]**

31. Paragraphs 1 through 6 are incorporated herein.

32. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

33. The respondent agreed to provide services relating to the collection case. She accepted a $500 retainer.

34. By failing to take any action on the case, the respondent did not earn the fees ($500) she had been paid and did not accomplish the services for which she had been hired.

35. By failing to return the $500 McCormick had paid to the respondent when she had not earned such fees because she did not complete the services, the respondent exercised dominion or ownership over such funds held for McCormick's benefit.

36. The respondent knew that she was keeping the $500 of funds she had not earned, knowing that such funds should be returned to her client because she had not earned them and knowing that keeping such funds was not authorized.

37. The respondent did not have permission from the client to use his funds for her personal purposes.

38. Through the unauthorized exercise of dominion or ownership these funds, the respondent knowingly converted or misappropriated such client funds.

39. Through her conversion or misappropriation of client funds, the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

40. The foregoing conduct of the respondent establishes grounds for discipline as provided for in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

41. WHEREFORE, complainant prays at the conclusion hereof.

### Salgado Matter

42. Erica Salgado ("Salgado") and her daughter were injured in a car accident on March 14, 2001. Salgado sustained a shoulder injury that required surgery and therapy. Her daughter experienced emotional trauma due to the accident and received therapy.

43. Salgado hired the respondent in April 2001 to represent her and her daughter in their personal injury case. Thus, an attorney client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that she would provide the services in accordance with the Colorado Rules of Professional Conduct.

44. Salgado gave the respondent the original documents having to do with the case, including photographs of the damage to her vehicle. The respondent failed to provide Salgado with a contingent fee agreement. Salgado called the respondent during the next several months to report her physical status.

45. In October 2001, the respondent had Salgado execute medical releases. Respondent apparently forwarded these to a clinic at which Salgado and her daughter had received treatment. The respondent advised Salgado that they would have to wait until all

the medical claims were made before a demand letter could be sent.

46. Salgado left many messages for the respondent during subsequent months. The respondent rarely returned the calls. When the respondent did return the calls, she provided no meaningful information to Salgado about her case.

47. Finally in December 2002, Salgado had a conversation with the respondent wherein the respondent said that the insurance company had not responded to letters. The respondent asked Salgado to send her $121 for the filing fee in district court and she would file an action. Salgado sent the respondent a $121 check on December 10, 2002.

48. The respondent filed a civil action on behalf of Salgado against the driver of the other vehicle on February 5, 2003, in Arapahoe County District Court. This case was styled *Erica Salgado v. Jane Kindvall*, Arapahoe County District Court, Case No. 03CV0457 (the "litigation"). However, the respondent failed to properly serve the defendant, although she represented to Salgado that service had been achieved.

49. Salgado thereafter tried to contact the respondent repeatedly, including sending her a letter in June 2003. The respondent never responded.

50. In May 2003, the district court issued a "Delay Reduction Rule 16 Status Order." The district court stated that the case would be dismissed unless respondent took action within 30 days. Respondent failed to do so. Due to respondent's failure to prosecute the case, the court dismissed the litigation on July 2, 2003.

51. The respondent left a voicemail for Salgado in July, but only left a telephone number. Salgado called that number repeatedly and never received an answer.

52. The respondent never contacted Salgado again. Salgado has never received her original file from the respondent. Salgado's successor counsel learned that the respondent had failed to notify the insurance ad-

juster of Salgado's and her daughter's injuries.

## CLAIM V

**[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]**

53. Paragraphs 42 through 52 are incorporated herein as if fully set forth.

54. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

55. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter in each of the following respects. Respondent did not act with reasonable diligence and promptness in handling Ms. Salgado's case. Respondent failed to inform the insurance adjuster of complainant's injuries. Respondent did not obtain adequate service of the Complaint upon the defendant and otherwise failed to prosecute the litigation. Instead, respondent abandoned the case.

56. The respondent knew or should have known that her lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

57. The respondent's lack of diligence and promptness, and/or neglect caused injury or potential injury to the client, in that Salgado's personal injury action was delayed.

58. The respondent's pattern and practice of failing to accomplish her professional tasks for the client, coupled with the failure to communicate with the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

59. By such conduct, the respondent violated Colo. RPC 1.3.

60. WHEREFORE, the complainant prays at the conclusion hereof.

### CLIAM VI

**[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a) ]**

61. Paragraphs 42 through 52 are incorporated herein as if fully set forth.

62. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

63. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respects. Respondent failed to keep Salgado adequately informed about the status of her case and failed to adequately respond to repeated inquiries from Salgado for more than two years, as described above. Respondent then ended all communication with Salgado. Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

64. The respondent knew or should have known that she had failed to communicate adequately with her client over an extended period of months.

65. The respondent's pattern and practice of failing to communicate with the client caused injury or potential injury to the client, in that Salgado's personal injury action was delayed.

66. The respondent's failure to communicate on these matters, coupled with the failure to accomplish professional tasks on behalf of the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and /or relinquished the professional responsibilities owed to the client.

67. By such conduct, the respondent violated Colo. RPC 1.4(a).

68. WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM VII

**[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]**

69. Paragraphs 42 through 52 are incorporated herein as if fully set forth.

70. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

71. The respondent effectively terminated the attorney-client relationship by failing to communicate with the client despite the client's numerous attempts to communicate with the respondent, and by failing to take any other action on behalf of the client.

72. The respondent failed to give the client notice that she had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest.

73. Respondent failed to return the client's files.

74. By such conduct, the respondent violated Colo. RPC 1.16(d).

75. WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM VIII

**[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation (Knowing Conversion)—Colo. RPC 8.4(c) ]**

76. Paragraphs 42 through 52 are incorporated herein.

77. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

78. Respondent engaged in dishonesty by telling the complainant that respondent had been in contact with the insurance company. In fact, as successor counsel learned, respondent had failed to notify the insurance adjuster of the Salgados' claim.

79. The foregoing conduct of the respondent establishes grounds for discipline as provided for in C.R.C.P. 251.5 and violates Colo. RPC 8.4(c).

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified above; the respondent be appropriately disciplined for such misconduct; the respondent be required to refund fees to the client, and/or the client protection fund pursuant to C.R.C.P. 252.14(b), and/or provide restitution to third parties; the respondent be required to return client files; the respondent be required to take any other remedial action appropriate under the circumstances; and the respondent be assessed the costs of this proceeding.

## COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

### Jurisdiction

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on October 21, 1993, and is registered upon the official records of this court, registration no. 23107. She is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is P.O. Box 803, Lafayette, CO 80026. A more recent address is P.O. Box 767, Littleton, CO 80160.

### General Allegations

#### Buckley Matter

2. *Criminal Case.* On August 9, 2002, complainant Donald J. Buckley was served with a summons and complaint by the Douglas County Sheriff for violation of C.R.S. § 12–64–114, Violation of Animal Medical Treatment. The complaining witness was Caron Andrews. The return date was set for September 16, 2002 in Douglas County Court.

3. Mr. Buckley retained respondent as counsel. Thus, an attorney-client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that she would provide the services in accordance with the Colorado Rules of Professional Conduct.

4. Respondent appeared with Mr. and Mrs. Buckley at the return date. Mr. Buckley pled not guilty. Mrs. Buckley paid respondent $500 at that time. The case, styled *People v. Donald Buckley,* Douglas County Court, Case No. 02M1917 (the "criminal case"), was set for trial on November 21, 2002.

5. On November 21, 2002, the parties reached a disposition. The prosecutor dismissed the charges. Respondent wrote to Mr. Buckley expressing her satisfaction with the result.

6. *Civil Case.* Caron Andrews also brought a civil suit against Mr. Buckley, styled *Caron Andrews v. Donald Buckley,* Douglas County District Court, Case No. 02CV1026 (the "civil case"). The Complaint was filed and served in September 2002. Respondent agreed to represent Mr. Buckley on this case as well. Ms. Andrews moved for default judgment in early October. Respondent filed an Answer and Counterclaim on November 20th. However, Ms. Andrews immediately moved to strike the Answer and Counterclaim. Respondent responded on December 6th. Ms. Andrews replied December 19th.

7. On January 3, 2003, the court entered default judgment against Mr. Buckley and

ordered the plaintiff to set a hearing on damages. On January 24th, the court set the damages hearing for May 16, 2003. Plaintiff's counsel filed and mailed to respondent a notice of the damages hearing the next day.

8. Mr. Buckley received a copy of the court's January 3, 2003 Order. Mr. Buckley called respondent and informed her of what he had received from the court. Respondent assured Mr. Buckley that she needed only to file a motion. At respondent's request, Mr. Buckley sent to her his copy of the court's mailing.

9. Mr. Buckley did not know, and was not told by respondent, that there was a hearing set for May 16, 2003. Instead, he understood that respondent was attending to the case.

10. On May 16, 2003, Ms. Andrews appeared with counsel for the damages hearing. Respondent and Mr. Buckley did not appear. The Buckleys claim that respondent did not notify them of the hearing date. The court entered default judgment against Mr. Buckley for over $700,000 plus approximately $70,000 in interest.

11. Ms. Andrews made some efforts toward collection, including by serving Mr. Buckley with subpoena for a Rule 69 deposition. This was the first notice Mr. Buckley had that default judgment had been entered against him. The subpoena caused the Buckleys to engage new counsel. New counsel learned that respondent had been immediately suspended in July 2003, and that there were formal proceedings pending against respondent with this Court.

12. On February 14, 2004, the Buckleys' new counsel, Mark Sares, filed on Mr. Buckley's behalf a Motion for Relief from Order of Default Judgment and Forthwith Stay of Proceedings to Enforce Judgment. On February 19th, the court ordered the Rule 69 deposition vacated and stayed further collection pending briefing on the Motion. The parties filed response and reply briefs in March. The Court has not yet ruled.

## CLAIM I

[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]

13. Paragraphs 1 through 12 are incorporated herein as if fully set forth.

14. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

15. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter in each of the following respects. Respondent neglected the defense of Mr. Buckley's case, failed to attend the damages hearing, and abandoned the case. The respondent was required to complete each of the specific tasks described above. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

16. The respondent knew or should have known that her lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

17. The respondent's lack of diligence and promptness, and/or neglect caused serious or potentially serious injury to the client.

18. The respondent's pattern and practice of failing to accomplish her professional tasks for the client, coupled with the failure to communicate with the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

19. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM II

**[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information— Colo. RPC 1.4(a) ]**

20. Paragraphs 1 through 12 are incorporated herein as if fully set forth.

21. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

22. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respects. Respondent did not communicate with the Buckleys after January 2003, did not inform the Buckleys about the damages hearing, and otherwise failed to keep the Buckleys apprised of the status of the case. Each of these failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

23. The respondent knew or should have known that she had failed to communicate adequately with her client over an extended period of months.

24. The respondent's pattern and practice of failing to communicate with the client caused serious or potentially serious injury to the client.

25. The respondent's failure to communicate on these matters, coupled with the failure to accomplish professional tasks on behalf of the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and /or relinquished the professional responsibilities owed to the client.

26. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM III

**[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]**

27. Paragraphs 1 through 12 are incorporated herein as if fully set forth.

28. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

29. The respondent effectively terminated the attorney-client relationship by failing to communicate with the client, and by failing to take any other action on behalf of the client.

30. The respondent failed to give the client notice that she had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest. Instead, Mr. Buckley learned of the default judgment entered against him when he was served with at Rule 69 subpoena.

31. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

### West Matter

32. On August 29, 2002, Darcy Lackey, n/k/a Darcy West ("West") engaged respondent to represent her in a veterinary malpractice case against Melissa R. King, DVM. The terms of the engagement were set forth in an Hourly Fee Agreement. West paid respondent a $500 retainer. Thus, an attorney-client relationship was formed, thereby forming an obligation to perform the agreed-upon services. By agreeing to perform the requested services, the respondent inherently represented that she would provide the services in accordance with the Colorado Rules of Professional Conduct.

33. In September 2002, respondent apparently contacted Dr. King's insurance carrier, Atlantic Mutual. Atlantic Mutual requested information from respondent about the claim. Respondent did not respond.

34. West last spoke to respondent in early 2003. Respondent assured West that she was proceeding on West's malpractice claim.

35. In May 2003, Atlantic Mutual wrote to West. Atlantic Mutual described its efforts to communicate with respondent:

Your attorney has moved offices, but failed to provide an updated address, and her telephone number has changed, but the voice mail box is nearly continually "full", therefore we have been unsuccessful in contacting her since December. We are writing to you at this time to either request you provide our office with the information still needed, or have you contact your attorney regarding the information still needed.

36. West herself made efforts to communicate with respondent by telephone and letter, also without success. On July 24, 2003, West wrote to respondent, reporting that, due to respondent's inaction, Atlantic Mutual had denied her claim against Dr. King. West terminated respondent as her counsel and asked respondent to return her $500 retainer. Respondent did not respond.

### CLAIM IV

**[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to that Lawyer—Colo. RPC 1.3]**

37. Paragraphs 32 through 36 are incorporated herein as if fully set forth.

38. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

39. The respondent failed to act with reasonable diligence and promptness and neglected the client's legal matter. Respondent neglected West's malpractice claim,

failed to provide information requested by the insurance carrier, and abandoned the case.

40. The respondent knew or should have known that her lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

41. The respondent's lack of diligence and promptness, and/or neglect caused serious or potentially serious injury to the client.

42. The respondent's pattern and practice of failing to accomplish her professional tasks for the client, coupled with the failure to communicate with the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

43. By such conduct, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM V

**[A Lawyer Shall Keep A Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a) ]**

44. Paragraphs 32 through 36 are incorporated herein as if fully set forth.

45. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

46. This respondent failed to keep the client reasonably informed about the status of the legal matter and failed to comply promptly with reasonable requests for information in the following respects. Respondent did not communicate with West after early 2003, did not inform West that she was not providing information requested by the insurance carrier, and did not return West's later calls about the case. Each of these

failures to communicate adequately with the client constitutes a separate violation of Colo. RPC 1.4(a) as do all of them together.

47. The respondent knew or should have known that she had failed to communicate adequately with her client over an extended period of months.

48. The respondent's pattern and practice of failing to communicate with the client caused serious or potentially serious injury to the client.

49. The respondent's failure to communicate on these matters, coupled with the failure to accomplish professional tasks on behalf of the client, constitutes abandonment of the professional responsibilities owed to the client. The totality of facts demonstrates that the respondent effectively deserted, rejected and/or relinquished the professional responsibilities owed to the client.

50. By such conduct, the respondent violated Colo. RPC 1.4(a).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM VI

**[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]**

51. Paragraphs 32 through 36 are incorporated herein as if fully set forth.

52. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

53. The respondent effectively terminated the attorney-client relationship by failing to communicate with the client despite the client's attempts to communicate with the respondent, and by failing to take any other action on behalf of the client.

54. The respondent failed to give the client notice that she had abandoned the representation, failed to advise the client to obtain other counsel, and otherwise failed to take steps to protect the client's interest. After West terminated respondent, respondent failed to return the $500 retainer, which respondent had not earned.

55. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified above; the respondent be appropriately disciplined for such misconduct; the respondent be required to refund fees to the client, and/or the client protection fund pursuant to C.R.C.P. 252.14(b); the respondent be required to take any other remedial action appropriate under the circumstances; and the respondent be assessed the costs of this proceeding.

